UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DANIEL ENGEL, Derivatively on Behalf of Nominal Defendant AXSOME THERAPEUTICS, INC., <br><br> Plaintiff, <br><br> v. <br><br> HERRIOT TABUTEAU, NICK PIZZIE, MARK JACOBSON, CEDRIC O'GORMAN, KEVIN LALIBERTE, ROGER JEFFS, MARK COLEMAN, and MARK SAAD, <br><br> Defendants, <br><br> and <br><br> AXSOME THERAPEUTICS, INC., <br><br> Nominal Defendant. | Case No. 1:22-cv-6183 <br><br> **VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT** |

Plaintiff Daniel Engel ("Plaintiff"), by and through his undersigned attorneys, brings this derivative complaint for the benefit of nominal defendant, Axsome Therapeutics, Inc. ("Axsome" or the "Company"), against its Board of Directors (the "Board") and certain of its executive officers seeking to remedy defendants' breaches of fiduciary duties and contribution for Violations of Sections 10(b) and 21D of the Securities Exchange Act of 1934 (the "Exchange Act"). Plaintiff's allegations are based upon his personal knowledge as to himself and his own acts, and upon information and belief, developed from the investigation and analysis by Plaintiff's counsel, including a review of publicly available information, including filings by Axsome with the U.S. Securities and Exchange Commission ("SEC"), press releases, news reports, analyst reports, investor conference transcripts, publicly available filings in lawsuits, and matters of public record.

1

**I.      NATURE AND SUMMARY OF THE ACTION**

1.      Axsome is a biopharmaceutical company that develops novel therapies for central nervous system conditions. One of its four core product candidates is AXS-07, a novel, oral investigational medicine for the acute treatment of migraine.

2.      Since December 2019, Axsome assured that its New Drug Application ("NDA") for AXS-07 submitted to the U.S. Food and Drug Administration ("FDA") was on track.

3.      On November 5, 2020, Axsome announced that it would submit its NDA in the first quarter of 2021, one quarter later than expected, "to allow for inclusion of supplemental manufacturing information to ensure a robust submission package." On this news, the Company's stock price fell $5.22 per share, or 7%, to close at $69.51 per share on November 5, 2020.

4.      However, Defendants assured that this was "standard" information and did not reflect any manufacturing issues.

5.      The truth fully emerged on April 25, 2022, before the market opened, when Axsome announced that the FDA found chemistry, manufacturing, and controls ("CMC") issues "are unresolved." As a result, "the Company expects to receive a Complete Response Letter" with respect to the NDA for AXS-07.

6.      On this news, the Company's stock price fell $8.60, or 22%, to close at $30.50 per share on April 25, 2022.

7.      These revelations precipitated the filing of a securities class action in this District against Axsome and certain of the defendants named herein, captioned *Gru v. Axsome Therapeutics, Inc., et al.*, Case No. 1:22-cv-3925 (the "Securities Class Action").

8.      Plaintiff did not make a litigation demand prior to filing this action because such action would have been futile based upon the composition of the Board and the actions taken by the Board, as alleged herein.

## II. JURISDICTION AND VENUE

9. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 in that this Complaint states a federal question: contribution for violations of Section 10(b) of the Exchange Act. This Court has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. § 1367(a). This action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have.

10. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1401 because a substantial portion of the transactions and wrongs complained of herein occurred in this District, and the Defendants have received substantial compensation in this district by engaging in numerous activities that had an effect in this District.

## III. PARTIES

**Plaintiff**

11. Plaintiff Daniel Engel purchased shares of Axsome stock in May 2021 and has continuously owned his Axsome stock since that date. He currently owns 200 shares.

**Nominal Defendant**

12. Nominal Defendant Axsome is a Delaware corporation with its principal executive offices located at 22 Cortlandt Street, 16th Floor, New York, New York 10007. The Company's common stock trades on the NASDAQ exchange under the symbol "AXSM."

**Defendants**

13. Defendant Herriot Tabuteau ("Tabuteau") has served as Chief Executive Officer ("CEO") and a director of the Company since its founding in January 2012. He is named as a defendant in the Securities Class Action.

14. Defendant Nick Pizzie ("Pizzie") has served as the Company's Chief Financial Officer ("CFO") since May 2018. He is named as a defendant in the Securities Class Action.

15. Defendant Cedric O'Gorman ("O'Gorman") served as the Company's Senior Vice President of Clinical Development and Medical Affairs from September 2017 to September 2021. He is named as a defendant in the Securities Class Action.

16. Defendant Kevin Laliberte ("Laliberte") served as the Company's Executive Vice President of Product Strategy from January 2021 to December 2021. He is named as a defendant in the Securities Class Action.

17. Defendant Roger Jeffs ("Jeffs") has served as a director of the Company since December 2014.

18. Defendant Mark Coleman ("Coleman") has served as a director of the Company since December 2014.

19. Defendant Mark Saad ("Saad") has served as a director of the Company since December 2014.

20. Defendants Tabuteau, Pizzie, O'Gorman, Laliberte, Jeffs, Coleman, and Saad are sometimes referred to hereinafter as the "Individual Defendants."

## IV. DUTIES OF THE INDIVIDUAL DEFENDANTS

21. By reason of their positions as officers, directors, and/or fiduciaries of Axsome and because of their ability to control the business and corporate affairs of Axsome, at all relevant times, the Individual Defendants owed Axsome and its shareholders fiduciary obligations of good faith, loyalty, and candor, and were required to use their utmost ability to control and manage Axsome in a fair, just, honest, and equitable manner. The Individual Defendants were required to act in furtherance of the best interests of Axsome and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit. Each director and officer of the Company owes to Axsome and its shareholders a fiduciary duty to exercise good

faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing.

22. The Individual Defendants, because of their positions of control and authority as directors and/or officers of Axsome, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein. Because of their advisory, executive, managerial, and directorial positions with Axsome, each of the Individual Defendants had knowledge of material non-public information regarding the Company.

23. To discharge their duties, the officers and directors of Axsome were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the Company. By virtue of such duties, the officers and directors of Axsome were required to, among other things:

(a) Exercise good faith to ensure that the affairs of the Company were conducted in an efficient, business-like manner so as to make it possible to provide the highest quality performance of their business;

(b) Exercise good faith to ensure that the Company was operated in a diligent, honest, and prudent manner and complied with all applicable federal and state laws, rules, regulations and requirements, and all contractual obligations, including acting only within the scope of its legal authority;

(c) Exercise good faith to ensure that the Company's communications with the public and with shareholders are made with due candor in a timely and complete fashion; and

(d) When put on notice of problems with the Company's business practices and operations, exercise good faith in taking appropriate action to correct the misconduct and prevent its recurrence.

V.     **SUBSTANTIVE ALLEGATIONS**

   A.     **Background**

24.    Axsome is a biopharmaceutical company that develops novel therapies for central nervous system conditions. One of its four core product candidates is AXS-07, a novel, oral investigational medicine for the acute treatment of migraine.

   B.     **The Individual Defendants Cause the Company to Issue Materially Misleading Statements**

25.    On December 30, 2019, the Individual Defendants caused Axsome to issue a press release announcing that AXS-07 had met its two co-primary endpoints in its Phase 3 trial called MOMENTUM for the treatment of migraine. In relevant part, the press release stated that "[t]he positive results on both co-primary endpoints along with the demonstration of component contribution support the filing of an NDA for AXS-07 in the acute treatment of migraine." It also stated that "[b]ased on FDA feedback, Axsome believes that MOMENTUM will be the only efficacy trial required to support an NDA filing for AXS-07 for the acute treatment of migraine." As a result, the Company planned to file its NDA in the second half of 2020.

26.    On March 12, 2020, the Individual Defendants caused Axsome to report its fourth quarter and full year 2019 financial results, reiterating that "[t]he positive results from the MOMENTUM trial support an NDA filing for AXS-07 in the acute treatment of migraine, which is anticipated in the fourth quarter of 2020." To support this NDA, "enrollment in a Phase 3 open-label, long-term safety extension study of AXS-07 is ongoing."

27.    The same day, the Company held a conference call in connection with the fourth quarter and full year 2019 financial results. During the call, defendant Tabuteau stated:

> The positive results from the MOMENTUM trial support an NDA filing for AXS-07 in the acute treatment of migraine and we remain on track to file this NDA in the second half of 2020. With . . . two planned NDA filings Axsome is on track to transition to commercial stage potentially as early as next year.

6

28. The same day, the Individual Defendants caused Axsome to file its annual report on Form 10-K with the SEC for the period ended December 31, 2019 (the "2019 10-K"). It included only generic, boilerplate representations about regulatory approval, including that "the FDA may refuse to approve an NDA if the applicable regulatory criteria are not satisfied or may require additional . . . [CMC], or other data and information."

29. On April 6, 2020, the Individual Defendants caused Axsome to issue a press release announcing that AXS-07 met its co-primary endpoints in a second Phase 3 trial called INTERCEPT for the treatment of migraine, stating in relevant part:

> In the trial, AXS-07 met the co-primary endpoints of freedom from migraine pain and freedom from most bothersome symptoms as compared to placebo. AXS-07 is Axsome's novel, oral, multi-mechanistic investigational medicine for the acute treatment of migraine. . . .
>
> \*   \*   \*
>
> "We are very pleased with the strong results of the Phase 3 INTERCEPT trial, which confirm the superior and durable efficacy of AXS-07. The prevention of migraine pain progression, and the substantial increase in the rate of pain freedom demonstrated with early treatment with AXS-07, expand and enhance its differentiated profile for the acute treatment of migraine," said Herriot Tabuteau, MD, Chief Executive Officer of Axsome. "With INTERCEPT and the previously completed MOMENTUM Phase 3 trial in patients with a history of inadequate response to prior acute treatments, AXS-07 has now been evaluated in two positive well-controlled trials. These trials demonstrate the efficacy of AXS-07 against potent active and placebo comparators, across a spectrum of migraine attack settings, regardless of the timing of migraine treatment, disease severity, or baseline pain intensity. INTERCEPT strengthens our planned NDA for AXS-07 in the acute treatment of migraine, which remains on track to be submitted to the FDA in the fourth quarter."

30. On May 8, 2020, the Individual Defendants caused Axsome to announce its first quarter 2020 financial results in a press release that stated, among other things:

- **Migraine**: Axsome remains on track to submit an NDA for AXS-07 in the acute treatment of migraine to the FDA in the fourth quarter of 2020. The NDA is supported by positive efficacy results from the MOMENTUM and INTERCEPT trials. A Phase 3, open-label, long-term safety extension study

>of AXS-07 is ongoing to further support the NDA filing. To date, more than 700 patients have been dosed in this trial.

31.     The same day, the Company held a conference call in connection with the financial results. During the call, an analyst asked whether there was any new clinical data, including as to CMC activities, for the Company's NDAs. In response, defendant Tabuteau stated, in relevant part:

>With regards to CMC activities, there are registration batches which are being manufactured now. A good thing for us is that we have been manufacturing our clinical trial supply at commercial scale and also at the same CMO that we're using for commercial production. So, there's no scale up that needs to be done.
>
>Now, with regards to manufacturing and any kind of science to it, there's always tweaks and experimentation, but I would say that there is no rate-limiting step and there is no extensive experimentation. This is simply manufacturing our registration batches for regulatory purposes.

32.     On May 11, 2020, the Individual Defendants caused Axsome to file its quarterly report on Form 10-Q for the period ended March 31, 2020. It included only generic, boilerplate representations about regulatory approval, including that "in connection with the [CMC] data necessary for our NDA filings, we will need to conduct stability studies and provide stability data to establish appropriate retest or expiration dating period" and that "[d]uring the course of review, the FDA may also request or require additional CMC, or other data and information, and the development and provision of these data and information may be time consuming and expensive."

33.     On August 10, 2020, the Individual Defendants caused Axsome to announce its second quarter 2020 financial results in a press release, stating in relevant part:

>Axsome remains on track to submit an NDA for AXS-07 in the acute treatment of migraine to the FDA in the fourth quarter of 2020. The NDA is supported by positive efficacy results from the MOMENTUM and INTERCEPT trials.
>
>Enrollment has been completed in the MOVEMENT (Multimechanistic Treatment Overtime of Migraine Symptoms) Phase 3 open-label, long-term safety trial to support the planned NDA filing of AXS-07 in the acute treatment of migraine.

> More than 700 patients have been enrolled, approximately 450 of whom have been treated with AXS-07 for at least 6 months to date.

34. The same day, the Company held a conference call in connection with the financial results. During the call, defendant Tabuteau stated, in relevant part:

> Over the past several months, we continued to advance our . . . AXS-07 product candidate[] towards NDA submission[] in . . . migraine[.]
>
> * * *
>
> [W]e remain on track to submit the NDA for AXS-07 for the acute treatment of migraine in the fourth quarter. To that end, we have completed enrollment in the Phase 3 open-label safety extension trial of AXS-07 in migraine, which we call the MOVEMENT study to support the planned NDA filing. As we move towards the filing of our NDA[] in the fourth quarter . . . for AXS-07, our commercial team is focused on launch-readiness activities to ensure successful commercial execution.

35. The above statements in ¶¶ 25-34 were materially misleading because they failed to disclose: (1) that the Company failed to adhere to proper CMC practices for tis AXS-07 manufacturing process; and (2) that, as a result, there was a substantial risk to approval of the AXS-07 NDA.

### C. The Truth Begins to Emerge While the Individual Defendants Continue to Issue Materially Misleading Statements

36. On November 5, 2020, Axsome announced that it would submit its NDA in the first quarter of 2021, one quarter later than expected, "to allow for inclusion of supplemental manufacturing information to ensure a robust submission package." On this news, the Company's stock price fell $5.22 per share, or 7%, to close at $69.51 per share on November 5, 2020.

37. The same day, the Company held a conference call with analysts and investors to discuss its third quarter 2020 financial results. During the call, defendants Tabuteau and Jacobson reassured that the additional information was to ensure a robust submission and did not reflect any manufacturing issues. Specifically, defendant Jacobson stated: "So just want to be clear, this is not the result of the manufacturing or stability issue or anything like that. . . . [W]e will have data

available, that we think would add to the submission given [it's] a novel delivery technology. And so that will just allow us to make the package as robust as possible." Defendant Tabuteau assured that this was "standard" manufacturing information, stating: "[T]his is standard information when you manufacture additional batches. . . . And while we already have very long-term stability data on other batches, we think that because of the unique nature of the delivery technology, this can only help to make the submission robust and assure that there are no hiccups during review."

38. On March 1, 2021, the Individual Defendants caused Axsome to issue a press release announcing its fourth quarter and full year 2020 financial results, including that the Company "had successful pre-NDA meetings with the FDA . . . for AXS-07 in migraine" and is "nearing submission of the NDA for AXS-07 in the acute treatment of migraine, which is expected early in the second quarter."

39. On May 10, 2021, the Individual Defendants caused Axsome to issue a press release announcing its first quarter 2021 financial results. Therein, the Company stated that "Axsome is compiling the NDA for AXS-07 for the acute treatment of migraine, which is on track for submission to the FDA in the second quarter 2021."

40. The same day, the Company held a conference call in connection with these results. During the call, in response to an analyst question about the gating factors for the NDA given the multiple delays in the filing, defendant O'Gorman stated: "With regards to AXS-07, we're very much on track to file the NDA this quarter, as we've previously stated, and there really isn't any update there. The team is working diligently to make sure that we have a timely, but also a quality filing."

41. On August 9, 2021, the Individual Defendants caused Axsome to issue a press release announcing its second quarter 2021 financial results, including that the Company

"successfully filed [its] NDA for AXS-07 for the acute treatment of migraine in the second quarter[.]"

42. On September 14, 2021, the Individual Defendants caused Axsome to announce that the FDA had accepted the AXS-07 NDA.

43. On November 8, 2021, the Company held a conference call in connection with its third quarter 2021 results released earlier that day. During the call, in response to an analyst question regarding the FDA's delayed inspection of Axsome's contract manufacturing facility for the AXS-07 NDA, defendants Tabuteau and Laliberte downplayed any manufacturing issues. Specifically:

> **Analyst**: Just one quick question on the migraine, can you just help us understand, did you say that one of the two manufacturing sites might not be able to be signed off on by the PDUFA date? So you're implying that one could be and is one enough? Do both have to be filed? I was a little confused by your comment. Thank you.
>
> *   *   *
>
> **Laliberte**: Thanks for that question. So there are obviously multiple manufacturing sites involved in the process for AXS-07. The FDA notified us that one specific manufacturing location that is based in the United States is required to have an inspection prior to them, as part of the review process.
>
> And then they did notify us that because of COVID-related restrictions, that may be in jeopardy of happening before the PDUFA date. So it's just this one manufacturer based in the United States that they specifically notified us of in their communication.

44. On March 1, 2022, the Individual Defendants caused Axsome to announce its fourth quarter and full year 2021 financial results, stating in relevant part:

> Axsome's NDA for AXS-07 for the acute treatment of migraine is currently under review by the FDA with a PDUFA target action date for the NDA of April 30, 2022. The FDA previously notified the Company that, due to COVID-19 pandemic-related travel restrictions, they may be unable to complete a required inspection of a contract manufacturing facility, located in the United States, prior to the PDUFA date. Axsome has since been informed by the FDA that it does not anticipate any issues with completing this facility inspection prior to the AXS-07 PDUFA date.

11

45. The above statements in ¶¶ 36-44 were materially misleading because they failed to disclose: (1) that the Company failed to adhere to proper CMC practices for tis AXS-07 manufacturing process; and (2) that, as a result, there was a substantial risk to approval of the AXS-07 NDA.

D. **The Truth Fully Emerges**

46. On April 25, 2022, before the market opened, Axsome announced that the FDA had informed the Company that "chemistry, manufacturing, and controls ("CMC") issues identified during the FDA's review of the Company's New Drug Application ("NDA") for its AXS-07 product candidate for the acute treatment of migraine are unresolved." As a result, "the Company expects to receive a Complete Response Letter with respect to this NDA on or about the Prescription Drug User Fee Act target action date of April 30, 2022."

47. On this news, the Company's stock price fell $8.60, or 22%, to close at $30.50 per share on April 25, 2022.

48. On May 2, 2022, Axsome announced it had received a Complete Response Letter from the FDA regarding the AXS-07 NDA for the acute treatment of migraine. In a press release, the Company stated:

> [T]he Company has received a [CRL] from the [FDA] regarding its [NDA] for AXS-07 for the acute treatment of migraine. The CRL did not identify or raise any concerns about the clinical efficacy or safety data in the NDA, and the FDA did not request any new clinical trials to support the approval of AXS-07.
>
> The principal reasons given in the CRL relate to [CMC] considerations. The CRL identified the need for additional CMC data pertaining to the drug product and manufacturing process. Axsome believes that the issues raised in the CRL are addressable and intends to provide potential timing for a resubmission following consultation with the FDA.

## VI. DAMAGES TO THE COMPANY

49. As a direct and proximate result of the Individual Defendants' conduct, Axsome has been seriously harmed and will continue to be. Such harm includes, but is not limited to:

   a) Any funds paid to settle the Securities Class Action; and

   b) Costs incurred from compensation and benefits paid to the defendants who have breached their duties to Axsome.

50. In addition, Axsome's business, goodwill, and reputation with its business partners, regulators, and shareholders have been gravely impaired. The Company still has not fully admitted the nature of its false statements and the true condition of its business. The credibility and motives of management are now in serious doubt.

51. The actions complained of herein have irreparably damaged Axsome's corporate image and goodwill. For at least the foreseeable future, Axsome will suffer from what is known as the "liar's discount," a term applied to the stocks of companies who have been implicated in illegal behavior and have misled the investing public, such that Axsome's ability to raise equity capital or debt on favorable terms in the future is now impaired.

## VII. DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

52. Plaintiff brings this action derivatively in the right and for the benefit of Axsome to redress injuries suffered, and to be suffered, by Axsome as a direct result of breaches of fiduciary duty by the Individual Defendants and contribution for violations of Section 10(b) of the Exchange Act. Axsome is named as a nominal defendant solely in a derivative capacity. This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

53. Plaintiff will adequately and fairly represent the interests of Axsome in enforcing and prosecuting its rights.

54. Plaintiff has continuously been a shareholder of Axsome at times relevant to the wrongdoing complained of and is a current Axsome shareholder.

55. When this action was filed, Axsome's Board of Directors consisted of defendants Tabuteau, Jeffs, Coleman, and Saad. Plaintiff did not make any demand on the Board to institute this action because such a demand would be a futile, wasteful, and useless act, as set forth below.

56. Jeffs, Coleman, and Saad also served as members of the Audit Committee at relevant times. As such they are responsible for the integrity of Axsome's disclosures. The AXS-07 NDA presented a critical opportunity for the Axsome's transition to a commercial company. In their capacities as Audit Committee members, Jeffs, Coleman, and Saad reviewed and approved the materially misleading statements and allowed them to be disseminated in Axsome's SEC filings and other disclosures. Thus, Jeffs, Coleman, and Saad breached their fiduciary duties and are not disinterested, and demand is excused as to them.

57. Tabuteau is the Company's CEO and therefore is not independent under NASDAQ listing rules. As an employee, Tabuteau derives substantially all of his income from his employment with Axsome, thus could not disinterestedly consider a demand for action that might require him to sue the directors that control his continued employment and/or his fellow members of management with whom he works on a day-to-day basis. He is also named as a defendant in the Securities Class Action. As a result, demand is futile as to him.

## COUNT I

### Against the Individual Defendants for Breach of Fiduciary Duty

58. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

59. The Individual Defendants each owes and owed to the Company the duty to exercise candor, good faith, and loyalty in the management and administration of Axsome's business and affairs, particularly with respect to issues as fundamental as public disclosures.

60. The conduct by the Individual Defendants set forth herein was due to their intentional or reckless breach of the fiduciary duties they owed to the Company. The Individual Defendants intentionally or recklessly breached or disregarded their fiduciary duties to protect the rights and interests of Axsome.

61. In breach of their fiduciary duties owed to Axsome, the Individual Defendants willfully participated in and caused the Company to expend unnecessarily its corporate funds, rendering them personally liable to the Company for breaching their fiduciary duties.

62. In particular, the Individual Defendants knowingly or recklessly made untrue statements and/or permitted the Company's public filings, disclosures, and statements to misleadingly report Company's overall prospects.

63. As a direct and proximate result of the breaches of their fiduciary obligations by the Individual Defendants, Axsome has sustained and continues to sustain significant damages, including direct monetary damages, exposure to liability from securities litigation and a loss of goodwill in the capital markets. As a result of the misconduct alleged herein, defendants are liable to the Company.

## COUNT II

**(Against Defendants Tabuteau, Pizzie, O'Gorman, and Laliberte for Contribution For Violations of Sections 10(b) and 21D of the Exchange Act)**

64. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

65. The conduct of Defendants Tabuteau, Pizzie, O'Gorman, and Laliberte, as described herein, has exposed the Company to significant liability under various federal and state securities laws by their disloyal acts.

66. Axsome is named as a defendant in related securities fraud lawsuit that allege and assert claims arising under § 10(b) of the Exchange Act. The Company is alleged to be liable to private persons, entities and/or classes by virtue of many of the same facts alleged herein. If Axsome is found liable for violating the federal securities laws, the Company's liability will arise in whole or in part from the intentional, knowing, or reckless acts or omissions of all or some of the Defendants as alleged herein, who have caused the Company to suffer substantial harm through their disloyal acts. The Company is entitled to contribution and indemnification from these Defendants in connection with all claims that have been, are, or may be asserted against the Company by virtue of their wrongdoing.

67. As officers, directors and otherwise, Defendants Tabuteau, Pizzie, O'Gorman, and Laliberte had the power or ability to, and did, control or influence, either directly or indirectly, Axsome's general affairs, including the content of its public statements, and had the power or ability to directly or indirectly control or influence the specific corporate statements and conduct that violated § 10(b) of the Exchange Act and SEC Rule 10b-5.

68. Defendants Tabuteau, Pizzie, O'Gorman, and Laliberte are liable under § 21D of the Exchange Act, which governs the application of any private right of action for contribution asserted pursuant to the Exchange Act.

69. Defendants Tabuteau, Pizzie, O'Gorman, and Laliberte have damaged the Company and are liable to the Company for contribution.

70. No adequate remedy at law exists for Plaintiff by and on behalf of the Company.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiff, on behalf of Axsome, demands judgment as follows:

A. Declaring that plaintiff may maintain this action on behalf of Axsome and that plaintiff is an adequate representative of the Company;

B. Against all of the defendants and in favor of the Company for the amount of damages sustained by the Company as a result of the defendants' breaches of fiduciary duties, waste of corporate assets, and unjust enrichment;

C. Declaring that Defendants have breached and/or aided and abetted the breach of their fiduciary duties to Axsome;

D. Directing Axsome to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect Axsome and its stockholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for stockholder vote, resolutions for amendments to the Company's Bylaws or Articles of Incorporation and taking such other action as may be necessary to place before stockholders for a vote of the following corporate governance policies:

1. a proposal to strengthen the Company's controls over financial reporting;

2. a proposal to strengthen the Board's supervision of operations and develop and implement procedures for greater stockholder input into the policies and guidelines of the Board;

3. a proposal to strengthen Axsome's oversight of its disclosure procedures;

4. a provision to control insider transactions; and

5. a provision to permit the stockholders of Axsome to nominate at least three candidates for election to the Board;

E.  Extraordinary equitable and/or injunctive relief as permitted by law, equity, and state statutory provisions sued hereunder, including attaching, impounding, imposing a constructive trust on, or otherwise restricting the proceeds of defendants' trading activities or their other assets so as to assure that plaintiff on behalf of Axsome has an effective remedy;

F.  Awarding to Axsome restitution from defendants, and each of them, and ordering disgorgement of all profits, benefits, and other compensation obtained by the defendants;

G.  Awarding to plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

H.  Granting such other and further relief as the Court deems just and proper.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), plaintiff demands a trial by jury.

Dated: July 21, 2022

By: /s/Benjamin I. Sachs-Michaels
**GLANCY PRONGAY & MURRAY LLP**
Benjamin I. Sachs-Michaels
745 Fifth Avenue, 5th Floor
New York, New York 10151
Telephone: (212) 935-7400
E-mail: bsachsmichaels@glancylaw.com

-and-

Robert V. Prongay
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
E-mail: rprongay@glancylaw.com
prajesh@glancylaw.com

*Counsel for Plaintiff Daniel Engel*

## VERIFICATION

I, Daniel Engel, do hereby verify that I am a holder of common stock of Axsome Therapeutics, Inc. and was a holder of such common stock at the time of the wrongs complained of in the foregoing Verified Shareholder Derivative Complaint ("Complaint"). I have authorized the filing of the Complaint. I have reviewed the Complaint. All of the averments contained in the Complaint regarding me are true and correct upon my personal knowledge and, with respect to the remainder of the averments, are true and correct to the best of my knowledge, information, and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Date: 7/20/2022

*Daniel Engel*

Daniel Engel